ORAL ARGUMENT NOT YET SCHEDULED

Appeal No. 16-5189

---

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————————————————

MARILYN KEEPSEAGLE, et al.,

Plaintiffs,

v.

TOM VILSACK, Secretary, United States Department of Agriculture,

Defendant.

———————————————————————

On Appeal from the
United States District Court For the District of Columbia
Case No.:  1999-CV-03119 (EGS)
(The Honorable Emmett Sullivan, Judge)

———————————————————————

## BRIEF OF APPELLANT DONIVON CRAIG TINGLE
———————————————————————

D. Craig Tingle, Esq.
The Tingle Law Firm, P.A.
1008 Airport Road, Suite E
Destin, FL 32541
(850) 650-8138
tingleandassociatespa@embarqmail.com
Counsel for Appellant

October 21, 2016

---

## CERTICATE OF PARTIES, RULINGS, AND RELATED CASES

COMES NOW, The Tingle Law Firm, P.A. and files this <u>Certificate of Parties, Rulings, and Related Cases</u>, pursuant to Circuit Rule 28.1(a)(1).

(A) Parties and Amici.

<u>Plaintiff</u> in the court below and Appellant in this Court is Donivon Craig Tingle; a silent, absent, unnamed class member, who filed a timely objection on the record. There is an additional Plaintiff in the court below and Appellant in this Court who is Keith Mandan, who is a class representative. Each Appellant is represented by separate counsel who filed separate Notices of Appeal, though the cases have since been consolidated.

<u>Plaintiff</u> in the court below and Appellees in this Court are the remaining class representatives who have adopted the imposed *Cy Pres* provisions introduced by class counsel.

<u>Defendants</u> in the court below and possibly <u>Intevenors</u> or an <u>Amicus</u> in this Appeal is the United States Department of Agriculture with Thomas Vilsack having served in his official capacity as Secretary of the United States Department of Agriculture.

(B) Rulings Under Review.

Appellant(s) seek review of the District Court's Order of April 20, 2016, granting the distribution of $380,000,000.00 by providing $265,000,000.00 in *cy pres* distributions; $38,000,000.00 of the funds to third-party charities; $77,000,000.00 to class members; and no discussion of interest income earned on the $380,000,000.00 during the five-year holding period.  This order was accompanied by a Memorandum Opinion issued the same day.  The ruling under review is a Final Rule.

(C) Related Cases.

The case on review has not been previously before this Court or any other appellate court.  To the best of counsel's knowledge, no other related cases currently are pending in this Court or in any other federal court of appeals, nor in any other court in the District of Columbia.

/s/ D. Craig Tingle
D. Craig Tingle

# TABLE OF CONTENTS

**PAGE(S)**

STATEMENT OF JURISDICTION……………………………………….…… 1

STATEMENT OF THE STANDARD OF REVIEW ……………………….… 1

STATEMENT OF THE ISSUES ………………………………………….… 4

STATEMENT OF THE CASE ……………………………………………... 6

SUMMARY OF ARGUMENT ……………………………………….… 13

ARGUMENT ……………………………………………………….… 15

  1.  Application of *Cy Pres* is Improper in This Instance ……...………….…… 15

    a.  All the Settlement Funds Should Have Been Awarded to Class Members ……………………………………………... 15

    b.  *Cy Pres* is Wrong Because Class Members are Not Fully Compensated ……………………………………………….… 21

    c.  *Cy Pres* Must be Narrowly Tailored to Benefit the Class …………..… 24

  2.  Class Counsel Had a Conflict of Interest and Breached Its Fiduciary Duty …………………………………………………….…… 30

  3.  The Class Representatives Breached Their Fiduciary Duties …………… 35

CONCLUSION …………………………………………………….… 38

CERTIFICATE OF COMPLIANCE ………………………………….… 40

CERTIFICATE OF SERVICE …………………………………………..… 41

## <u>TABLE OF AUTHORITIES</u>

**CASES:** PAGES(S)

*Advanced Nano Coatings, Inc. v. Hanafin,*
478 F. App'x 838 (5th Cir. 2012) ……………………………….......……… 30

\* *Anthem Products, Inc., v. Windsor*
521 U.S. 591, 117 S.Ct. 2231, 138 L. Ed 2d 689 (1997) ………………….…….. 36

\* *Boeing v. Van Gemert,*
444 U.S. 472 n.7 (1980) ……………………………..……………………….……… 33

*Chapman v. First Index, Inc.,*
796 F.3d 783 (7th Cir. 2015) ……………………………………………….. 35

*Chavez v. PVH Corp.,*
13-cv-01797-LHK (N.D. Cal. 2015) ……………………………………….. 37

\* *City of Philadelphia v. American Oil Co.,*
53 F.R.D. 45, 72 (D. NJ 1971)…………………………………………..… 28

\* *Copeland v. Marshall,*
641 F.2d 880 (C.A.D.C. 1980) ……………………………….................. 33

\* *County of Suffolk v. Long Island Lighting Co.,*
907 F.2d 1295, 1325 (2nd Cir. 1990) ……………………………….……… 33

\* *Crawford v. Honig,*
37 F.3d 485, 487 (9th Cir. 1995) ……………………………….…………... 37

\* *Dennis v. Kellogg Co.,*
697 F.3d 858, 863, 867, 869 (9th Cir. 2012) ……………………… 18, 19, 27, 28

_____

\* Authorities upon which we chiefly rely are marked with asterisks.

*Dukes v. Wal-Mart Stores, Inc.,*
603 F.3d 571, 1173 (9th Cir. 2010) …………………………………………….. 19, 31

*Eisen v. Carlisle & Jacquelin,*
479 F.2d 1005, 1013 (2nd Cir. 1971), vacated on other grounds
417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed. 2d 732 (1974) ..………………………… 29

*Gardner v. GC Services, LP,*
Case No. 10-cv-0997 (S.D. Cal. 2012) …………….…………………………… 20

\* *Gerdes v. Estate of Cush,*
953 F.2d 201, 206 (5th Cir. 1992) ……………………………..……......…… 30, 35

\* *Hanlon v. Chrysler Corp.,*
150 F.3d 1011, 1020 (9th Cir. 1998) ………………………..……...…..… 32, 37

\* *Hill v. Western Electric Co.,*
672 F.2d 381, 388 (4th Cir. 1982) cert denied,
459 U.S. 981, 103 S.Ct. 318, 74 L.Ed. 294 (1982) ……………………..……... 35

\* *Hogget v. Brown,*
971 S.W. 2d 472, 487 Tex App Houston (14th District 1997) …………………... 35

*Hughes v. Kore of Indiana Enterprise, Inc.*
731 F.3d 672, 675 (7th Cir. 2013) …………….…………………………… 17

*Hunt v. Perryman In Re Easysaver Rewards Litigation,*
 (9th Cir. 2015) (D.C. No. 3:09-cv-02094-AJB-WVG) ………………………… 19

\* *In Re Airline Ticket Com'n Antitrust Litigation,*
307 F.3d 679, 682, 684 (8th Cir. 2002) …………………….…………… … 24, 27

\* *In Re Baby Products Antitrust Litigation,*
708 F.3d 163, 173, 174, 178 (3rd Cir. 2013) ………………………… 23, 24, 33, 34

\* *In Re Bank of America Corp. Securities Litigation,*
350 F.3d 747, 752 (8th Cir. 2003) ……………………………………... 21, 22

*  *In Re Bluetooth Headset Products Liability Litigation ... Michael Jones,*
654 F.3d 935, 940, 943 (9th Cir. 2011) ……………………..……………... 31, 37

*In Re Cendant Corp. Securities Litigation,*
 404 F.3d at 202 (3rd Cir. 2004) …………………………………………… 34

*  *In Re Compact Disc Minimum Advertised Price Antitrust Litigation,*
216 F.R.D. 197, 221 (D. Me. 2003) ……………………………….……… 20, 29

*  *In Re Easysaver Rewards Litigation,*
921 F.Supp. 2d 1040 (S.D. Cal. 2013) ………………………..……….. 33, 34

*  *In Re General Motors,*
55 F.3d 768, 820 (3rd Cir. 1995) …………………………………….…. 34, 36

*In Re Hotel Charges,*
500 F.2d 86 (9th Cir. 1974) ………………………………………………… 29

*  *In Re Katrina Canal Breaches Litigation,*
628 F.3d 185 (5th Cir. 2010) ……………………………………………... 20, 29

*  *In Re Pet Food Products Liability Litigation Jim W. Johnson and Dustin Turner,*
629 F.3d 333 (3rd Cir. 2010) …………………………………….………. 34

*  *In Re Pharmaceutical Industry Average Wholesale Price  Litigation,*
588 F.3d 24, 34 (1st Cir. 2009) ……………………………………..…..…. 30

*  *In Re Synthroid Marketing Litigation,*
264 F.3d 937, 959 (9th Cir. 2003) …………………………..……………... 37, 38

*  *Ira Holtzman, C.P.A. & Associates Ltd. v. Turza,*
728 F.3d 682 (7th Cir. 2013) ………………………………..……….…… 25, 26

*  *Jewish Guild for the Blind v. First National Bank in St. Petersburg,*
226 So.2d. 414 (Fla. 2nd DCA 1969) …………………………………....….. 29

*  *Kayes v. Pacific Lumber Co.,*
51 F.3d 1449, 1465 (9th Cir. 1995) …………………………………..………. 31

* *Kleiner v. First National Bank of Atlanta,*
751 F.2d 1193, 1207 n.28 (11th Cir. 1985) …………………………….…….….... 33

* *Klier v. Elf Atochem North America, Inc.,*
658 F.3d 468, 474, 475, 476, 478, 479, 480 (5th Cir. 2011) …..………..... 16, 17, 23

* *Mace v. Van Ru Credit Corp.,*
109 F.3d 338, 345, 347 (7th Cir. 1997) …………………………………..……… 17

* *Marshall v. National Football League,*
787 F.3d 502 (8th Cir. 2015) ……………………………….................21, 22, 27

* *Masters v. Wilhelmina Model Agency, Inc.,*
473 F.3d 423, 434-435 (2nd Cir. 2007) ………………………………….……… 23

* *Maywalt v. Parker & Parsley Petroleum, Co.,*
67 F.3d 1072, 1078 (2nd Cir. 1995) …………………………………….……… 33, 38

*McKenzie v. Cooper, Levins, & Pastko, Inc.,*
990 F.2d 1183, 1184 (11th Cir. 1993) …………………………………………… 15

* *Molski v. Gleich,*
307 F.3d 1155 (9th Cir. 2002) …………………………………………….. 19, 20

*Molski v. Gleich,*
318 F.3d 937, 955 (9th Cir. 2003) ……………………………………..……… 31

* *Nachshin v. AOL, LLC,*
663 F.3d 1034, 1038, 1040 (9th Cir. 2011) ……………………………… 19, 27, 28

* *Oetting v. Green Jacobson, P.C.,*
775 F. 3d 1060, 1065 (8th Cir. 2015) ………………………………...……… 22, 23

* *Ortiz v. Fibreboard Corp.,*
527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed. 2d 715 (U.S. 1999), remanded by
527 U.S. 1031, 119 S.Ct. 2387, 144 L.Ed 2d 789 (1999) …………………..…….. 36

\* *Parker v. Anderson,*
667 F.2d 1204, 1210-1211 (5th Cir. 1982) ………………………………….……… 33

\* *Pearson v. NBTY, Inc.,*
772 F.3d 778, 784  (7th Cir. 2014) …………………………………………….……… 34

*Pena v. Taylor Farms Pac., Inc.,*
2:13-cv-01282-KJM-AC (E.D. Cal. 2015) …………………………………...… 37

\* *Perry v. Beneficial Finance Co. of New York,*
81 F.R.D. 490, 497 (W.D.N.Y. 1979) ……………………………………….…. 17

\* *Pettway v. American Cast Iron Pipe Co.,*
576 F.2d 1157 (5th Cir. 1978), cert. denied,
439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed. 2d 74 (1979) …………………………... 20

\* *Radcliffe v. Experian Information Solutions, Inc.,*
715 F.3d 1157, 1164, 1167, 1169 (9th Cir. 2013) ……………..…..… 30, 31, 32, 37

\* *Rand v. Monsanto, Co.,*
926 F.2d 596, 599 (7th Cir. 1991) ……………………………………..……… 35

\* *Regions Bank v. Lee,*
905 So. 2d 765 (Ala. 2004) ……………………………………………….…... 36

\* *Rodriguez v. West Publishing Corp.,*
563 F.3d 948 (9th Cir. 2009) ……………………………….…………….. 31, 38

*Simer v. Rios,*
661 F.2d 655, 675 (7th Cir. 1981) …………………………………………….. 17

\* *Six (6) Mexican Workers v. Arizona Citrus Growers,*
904 F.2d 1301, 1307, 1308-1309, 1312 (9th Cir. 1990) ……...…... 17, 18, 26, 28, 29

\* *Sullivan v. DB Investments, Inc.,*
667 F.3d 273, 319 (3rd Cir. 2011) …………………………………….………. 20

\* *TBK Partners, Ltd. v. Western Union Corp.,*
675 F.2d 456, 462 (2nd Cir. 1982) ……………………….………........... 19, 20

\* *Tennille v. Western Union Co.,*
D. C. No. 1:09-cv-00938 JLK-KMT, No. 14-1432 (10th Cir. 2015) ……....……. 32

*Waters v. International Precious Metals Corp.,*
190 F.3d 1291, 1293 (11th Cir. 1999)……………………………………….…… 15

\* *Wilson v. Southwest Airlines, Inc.,*
880 F.2d 807 (5th Cir. 1989) …………………………………………..……… 25

**STATUTES:**

15 U.S.C. § 15 ………………………………………………...……… 23

Federal Rules of Civil Procedures 23 ………………………………….…….. 23

Federal Rules of Civil Procedures 23(e)(1)(C) ...……...………………………… 32

**OTHER AUTHORITIES:**

ALI Section 3.07, cmt.b ………………………………………….………… 22

Virginia Journal of Social Policy and The Law,
Vol. 21:2, Page 280 …………………………………………………… 15, 16

# **GLOSSARY**

| | |
|---|---|
| ALI | American Law Institute |
| ECF | Electronic Court Filing |
| IAF | Inter-American Fund |
| USDA | United States Department of Agriculture |

## STATEMENT OF JURISDICTION

Appellant Donivon Craig Tingle asserts jurisdiction under 28 U.S.C. Sec. 1331.  This Court has jurisdiction pursuant to 28 U.S.C. Sec. 1291.  This is an appeal brought from a Final Order entered by Judge Emmet Sullivan on April 20, 2016.  That Order is Document Number 871, Case Number 1:99-cvg-03119-EGS. The Appellant, Donivon Craig Tingle, filed a timely Notice of Appeal on June 15, 2016.  That document number is 879.

## STATEMENT OF THE STANDARD OF REVIEW

In the view of counsel, there are at least two applicable standards of review to be considered on this appeal.  The primary standard of review for the issues raised below is *de novo*.  However, some of the issues raised below are better suited for the *manifest weight of the evidence* standard of review.  Finally, there might be one or two issues that more properly rely upon the *abuse of discretion* standard of review because the trial judge failed to consider them when he should have or otherwise abused its discretion during the trial court's improper analysis.

1. All Settlement Funds should have been awarded to the class members.  The appropriate standard of review is *de novo*.

2. *Cy pres* is appropriate because class members are not fully compensated. The appropriate standard of review in my opinion is *manifest weight of the*

*evidence*, but I could see where the Court might prefer to apply a *de novo* standard of review.

3. *Cy pres,* if used at all, must be narrowly tailored to benefit the class members.  The appropriate standard of review is *de novo*.

4. Class counsel had a conflict of interest and breached its fiduciary duties to the unnamed class members.  The appropriate standard of review is *de novo.*

5. Class counsel intentionally misled the unnamed class members by stating that unless the *cy pres* plan of distribution was approved, the Defendant, the United States Department of Agriculture (USDA), would demand the $380,000,000.00 returned to them despite class counsel being aware that such a statement was in direct opposition to relevant and applicable federal case law.  The appropriate standard of review is *de novo*.

6. Class counsel failed to address the interest accumulation from the remaining $380,000,000.00, held for five years giving rise to inferences of self-dealing. The appropriate standard of review is *de novo*.

7. The class representatives breached their fiduciary duties to the unnamed class members. The appropriate standard of review is *de novo*.

8. The class representatives engaged in self-dealing.  The appropriate standard of review is *de novo*.

9.  The district court breached its fiduciary duty to the unnamed class members by failing to engage in adequate due diligence.  The appropriate standard of review is *de novo*.

10.  The district court abused its discretion by entering an order approving the *cy pres* scheme of distribution which was clearly in conflict not only with the gravamen, but the whole of the federal appellate case law applicable to this issue.  The appropriate standard of review is *abuse of discretion.*

11.  The district court abused its discretion and breached its fiduciary duties to the unnamed class members by failing to order an accounting of the income earned from the $380,000,000.00 over a period of five years and further failing to address how that money would be disbursed or distributed. Despite the word selection, the appropriate standard of review is *de novo* because it really is not discretionary to leave both unaddressed and unresolved a major component of the underlying matter.

## STATEMENT OF THE ISSUES

1. All Settlement Funds should have been awarded to the class members.

2. *Cy pres* is inappropriate because class members are not fully compensated.

3. *Cy pres,* if used at all, must be narrowly tailored to benefit the class members.

4. Class counsel had a conflict of interest and breached its fiduciary duties to the unnamed class members.

5. Class counsel intentionally misled the unnamed class members by stating that unless the *cy pre*s plan of distribution was approved, the Defendant, the USDA, would demand the $380,000,000.00 returned to them despite class counsel being aware that such a statement was in direct opposition to relevant and applicable federal case law.

6. Class counsel failed to address the interest accumulation from the $380,000,000.00, held for five years giving rise to inferences of self-dealing.

7. The class representatives breached their fiduciary duties to the unnamed class members.

8. The class representatives engaged in self-dealing.

9. The district court breached its fiduciary duty to the unnamed class members by failing to engage in adequate due diligence.

10. The district court abused its discretion by entering an order approving the *cy pres* scheme of distribution which was clearly in conflict with not only the gravamen, but the whole of the federal appellate case law applicable to this issue.

11. The district court abused its discretion and breached its fiduciary duties to the unnamed class members by failing to order an accounting of the income earned from the $380,000,000.00 over a period of five years and further failing to address how that money would be disbursed or distributed.

## STATEMENT OF THE CASE

This appeal is brought because an unnamed, absent, and silent class member who previously objected to the *cy pres* distribution hereby asserts that the district court improperly approved the settlement, particularly the *cy pres* distribution (See ECF No. 839, Filed on January 29, 2016, Letter 39 of 70, Donivon Craig Tingle's **Re:  Keepseagle v. Vilsack, Cy Pres Settlement Opposition**.)  Wrapped in this improper act are numerous smaller but equally improper actions that when taken together or even singly, necessitate that the district court takes a closer, more analytical and highly scrutinized look at both the settlement at large and the *cy pres* portion of the Settlement Agreement.

In or around 1999 this cause of action now on appeal was brought as a class action lawsuit against the United States Department of Agriculture (USDA) by a class of Native American farmers and ranchers represented by several class representatives.  This cause of action alleged systemic racial discrimination by the USDA.  Over the course of many years of discovery, ultimately, a settlement was reached.  This settlement created a fund of over $680,000,000.00.

A portion of the Settlement Agreement contained a *cy pres* provision that was set forth to create a fund for any residue remaining and a distribution scheme that paid over those funds to unnamed third-party charities through the supervision of a then unspecified board of trustees, which ultimately would not be overseen by

6

the district court.  The Settlement Agreement was prepared and presented by class counsel in such a way that the unnamed class members could not consider the terms and respond knowingly and timely.

Those class members that could successfully "prove up" their claim were awarded payments from the Settlement Fund (Fund).  Approximately 3,600 class members received a distribution from the Fund.  Upon payment to the class members, the Fund still held $380,000,000.00.  It is this Fund remainder and subsequent actions of certain entities and individuals surrounding this lawsuit that has given rise to this crisis.

Such an amount as large as $380,000,000.00 cannot reasonably be construed as a residue under any application of the word.  Moreover, that amount represented over one half of the total amount that funded the settlement.  A majority of anything cannot be reasonably construed to be a residue and currently, those funds presently earmarked for *cy pres* distribution consist of more money than the distribution made to the class members, moreover, the "left over funds" have been accruing interest for several years.

I say crisis because there has been and remains acutely divided positions regarding how these funds should be distributed.  As I shall demonstrate later, the Settlement Funds are owned by and belong to the class members.  The class members, particularly the absent, silent, and unnamed class members reject the *cy*

7

*pres* distribution by such an overwhelming super majority that if a ballot vote had been taken, it would have exceeded 90% of the class. In fact, numerous "listening conferences" were held to allow class members to voice their opinion regarding the *cy pres* distribution scheme. Apparently, no one at the listening conferences was willing to listen because the tension, hostility, and resentment between the absent, silent, and unnamed class members and their class counsel and their class representatives was palpable. The class was so diametrically split that no one counselor could represent the parties present. Class counsel repeatedly and consistently sided with its own point of view reinforced by the assistance of employees of the USDA and the advancement of the split caused by certain class representatives. So, what we have is a party opponent (United States Department of Agriculture) attending settlement conferences and having an opinion on the matter, attorneys that were in myriad breach of their fiduciary duties, and class representatives that had also abused their discretion and breached their fiduciary duties.

It was abundantly clear to the class counsel and anyone else in attendance that the class members overwhelmingly favored a second round of payment from the Fund. Many absent, silent, and unnamed class members presented themselves and offered anecdotal evidence in support of the rationale that the initial payments were insufficient to compensate them for the lost benefit of their bargain. What

was the lost benefit of their bargain?  It most surely was not a $50,000.00 payment as was the case in the overwhelming number of awards.  Rather, it was the loss of a dream, the deprivation of an opportunity with borrowed funds to become an entrepreneur in agribusiness.  At least some of those who spoke at listening conferences were able to demonstrate that even a $50,000.00 payment was insufficient to satisfy the equity requirements to attain this lost benefit of their bargain.  Once again, class counsel and class representatives were unmoved by the desperate pleas of the absent, silent, and unnamed class members, despite the fact that every fiduciary relationship includes the duties of obedience and loyalty.

During the settlement conferences and at every other opportunity, class counsel and most class representatives continued to steadfastly oppose the will of the majority of class members.  In fact, on numerous occasions class counsel stated that the USDA would demand its money back if the planned *cy pres* distribution was not carried out.  The absent, silent, and unnamed class members bringing this action relied, reasonably so, upon the statements of its counsel.  However, it is now known and is supported by ample federal appellate authority that once a settlement has been struck, the defendant no longer owns the funds and has no voice in the application of the settlement funds.  Class counsel was willing to say whatever needed to be said in order to bring this matter to a close and that these lapses in duty and discretion were never fully considered by the district court in a fairness

hearing because the silent, absent, and unnamed class members did not have a voice. Class counsel should have made the court aware of the tension within the class and made it clear that it could no longer advance the interests of the class because of the conflict. Rather than doing so, it simply picked a side, the side that it favored, and pushed through the district court's final order that is now being appealed. If it was the inclination of class counsel to "pick a side", it should have picked that side favored by an overwhelming majority of class members.

Additionally, the court abused its discretion by either not conducting an in-depth fairness hearing or being denied access to information regarding the undisclosed self-dealing conduct of at least three of the named class representatives. These individuals received a staggering amount of additional payouts, cloaked as "incentive payments", as well as coveted positions on the Board of Trustees. In fact, at least one of these individuals was adamantly opposed to the application of the *cy pres* distribution, favoring a payout of the remaining funds to class members. Remarkably, she completely reversed her position and shortly thereafter an additional position on the Board of Trustees was created for her, as well as a $100,000.00 payment. Furthermore, one Board of Trustee position and one Senior Officer position (President) have gone to individuals who previously worked for the defendant in this action, a defendant, that was sued for racial discrimination against the very people that are now being represented.

10

Now, despite all of the foregoing, one needs to recognize the fact that the *cy pres* portion of the Settlement Agreement is of no effect. That is because all of the Courts (as far as I can tell) that have opined on this seem to agree that when there are class members that are identifiable and ascertainable that all remaining funds should be distributed to the class members, so long as it is feasible to do so. Presently, all of the class members, or in some cases, their heirs, can be located. The amount in question is at least $380,000,000.00 and is probably over $400,000,000.00; this is not a residual amount and those funds contractually belong to the class members. Those funds are personal property of the class members and they should be distributed in accordance with the instructions of the class members named and unnamed. Moreover, the courts have a strong preference in favor of providing left-over funds to the class members.

This matter presents an appalling number of improper acts, self-dealing, collusion, breaches of fiduciary duty, conflicts of interests, misfeasance, and malfeasance as to demand a remand back to the trial court with instructions to conduct a detailed, in-depth, fairness hearing into the conduct of the class counsel and class representatives. In accordance with the preference of the Appellate Courts regarding cy pres, I believe that in at least one respect that this is an issue of first impression. This is the first time that a court is being asked to consider a *cy pres* distribution where the fund is as large or larger than the distribution to the

11

class members, where the class members are readily identifiable and ascertainable and where the distribution would not result in an inappropriate level of compensation for the class members and finally where the class counsel was compensated for $680,000,000.00 worth of value, but at present have merely delivered less than $250,000,000.00 in value.

## SUMMARY OF ARGUMENT

The settlement proceeds belong to the Plaintiffs which are all successful claimants or class members involved in this lawsuit. Applicable appellate federal case law overwhelmingly supports this fundamental position which has become so ensconced upon the landscape as to be doctrinal. Both the class counsel and the trial court went out of their respective ways to introduce an undeserving collection of third parties to take and benefit from this settlement.

Despite some suggestion to the contrary, there has been no windfall bestowed upon any class member(s) and this is particularly true for the Track A ($50,000.00) recipients. No farming or ranching family could ever be made whole by such a distribution. Moreover, by the manifest offering of an additional payout, all parties have in effect agreed that the first round of payment could not have made the claimants whole because any amount offered by a second disbursement would be in essence a windfall under such a position. Therefore, all parties agree that no windfall exists. Consequently, any amount offered short of the full amount of the residual settlement proceeds is a contrived and arbitrary award because it has not been tied to any findings of fact.

Along that way were incidents of self-dealing; breaches of fiduciary duty; and possibly collusion, either by class counsel, class representatives, and perhaps, in some instances, both. Class counsel knew or should have known that when such

13

a conflict of interest arose that it could not adequately represent the two factions that arose pertaining to the remaining settlement proceeds. The overwhelming support for the paying out of all the settlement proceeds was so vast that if class counsel was going to remain the plenary counsel, it should have chosen to represent the interests of the super majority. Class counsel chose a course of action that was more in line with its personal desires. The drafting of the settlement, its contents, and the availability of the instrument, and the timing of the settlement and the disbursements of the proceeds took place in such a way as to eliminate any opposition to the force-fed nature of the Settlement Agreement provisions.

The class representatives "sold their birthright" by accepting incentive awards in exchange for going along with the diminimis payout to the class members in the most recently proposed payout scheme. At a very minimum, the actions of the class counsel and class representatives give rise to the inference of self-dealing and collusion and that is sufficient to reverse and remand as case law will later illuminate.

If all of the above were not enough, there was never any discussion or resolution regarding how to distribute the earned income from the $380,000,000.00. This may have been an oversight by the trial court, but you will not convince me that it was an oversight by class counsel. If class counsel's failure

to address what might amount to tens of millions of dollars in additional funds is anything other than self-dealing, I can hardly wait to hear what.

## ARGUMENT

### 1. Application of C*y Pres* is improper in this instance.

The application of the *cy pres* provisions of the Settlement Agreement constitutes an improper act by the district court. In the instant case all of the class members are identifiable and ascertainable and have proven up their respective claims. In those rare instances where a class member is deceased, heirs have already come forward. The Fund is a property right and should be distributed to the class members. Appellate courts have provided great latitude to district courts regarding this decision; nevertheless, findings of fact are necessary so that the district court can explain its award in such a way that an appellate court may undertake its review. See Waters v. International Precious Metals Corp., 190 F.3d 1291, 1293 (11th Cir. 1999), citing McKenzie v. Cooper, Levins & Pastko, Inc., 990 F.2d 1183, 1184 (11th Cir. 1993).

### a. All the settlement funds should have been awarded to class members.

With respect to funds left over after a first-round distribution to class members, the ALI principles express a policy preference that residual funds should be redistributed to other class members until they recover their full losses, unless such further distributions are not practical. See, *Virginia Journal of Social Policy*

15

*and the Law,* Vol. 21:2 Page 280.   Succinctly stated, the class members have a greater claim to the Settlement Funds than a charity.  The Settlement Funds are the private personal property of the class members.   Only when further distributions to class members are no longer feasible does the court have the discretion to order a *cy pres* distribution.  *Virginia Journal of Social Policy at 280.*  See also <u>Klier v. Elf Atochem North America, Inc.</u>, 658 F.3d 468 (5th Cir. 2011).  The court held that it was an abuse of the trial court's discretion to order substantial Settlement Funds distributed to the *cy pres* fund when there was an identifiable sub-class to which the remaining proceeds could be distributed.  The court was too quick to move to the *cy pres* provision when ascertainable beneficiaries were available.  <u>Id</u>. at 480.  Because the settlement was generated by the value of the class members' claims, claims which belong solely to the class members as a result of their losses, the Settlement Funds belong solely to the class members.  <u>Id</u>. at 474.  In the present case, because the Settlement Funds are the property of the class, a *cy pres* distribution to a third party is not permissible when it is feasible to make further distributions to the class members.   *Cy pres* only exists as an option when it is not possible to put those funds to their very best use; which is, benefitting the class members directly.  <u>Id</u>. at 475.  Regardless of *cy pres*, the court's discretion remains tethered to the interests of the class, the entity that generated the funds.  <u>Id</u>. at 476.  The *cy pres* provisions are secondary to the controlling effect given to the interests

16

of the class members.  Id. at 478.  The district court must act for the benefit of the class as a whole.  Id.  *Cy pres* recovery is used where the individuals are not likely to come forward and prove their claims or cannot be given notice of the case. Mace v. Van Ru Credit Corp., 109 F.3d 338, 345 (7th Cir. 1997), citing, Simer v. Rios, 661 F.2d 655,675 (7th Cir. 1981).  *Cy pres* recovery is thus ideal for circumstances in which it is difficult or impossible to identify persons to whom damages should be assigned or distributed.  Further, there is no reason, when the injured parties can be identified, to deny them in favor of disbursement through some other means.  *Cy Pres* recovery is reserved only for those unusual situations where victims are unidentifiable; the disbursement of damages to victims would be impossible or inappropriate.  Mace at 347.  See also Hughes v. Kore of Indiana Enterprise, Inc., 731 F.3d 672 (7th Cir. 2013), [s]uch a decree of awards to charity are only appropriate if a distribution to class members is infeasible.  Id. at 675.

The existence of a large, unclaimed damage fund does not make a class action unmanageable.  Class actions have been found to be manageable even where there exists the prospect of substantial unclaimed funds.  See Perry v. Beneficial Finance Co. of New York, 81 F.R.D. 490, 497 (W.D.N.Y. 1979).  Where the goal of the underlying statute is strictly compensatory, a class action resulting in substantial unclaimed funds will not further that goal.  Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301, 1307 (9th Cir. 1990).  Following up on the

17

holding in <u>Six (6) Mexican Workers,</u> the Ninth Circuit went on to set aside a *cy pres* distribution because the district court did not apply the correct legal standard and thus abused its discretion in approving the settlement. The settlement neither identified the ultimate recipients of the product and cash *cy pres* awards nor sets forth any limit on those recipients, other than characterizing them as charities that feed the indigent. See <u>Dennis v. Kellogg, Co.</u>, 697 F.3d 858 (9th Cir. 2012). In the present case on appeal, no particular *cy pres* beneficiaries have been selected. We neither know how much money will be distributed to them nor understand what criteria will be applied in awarding cash disbursements. We do know that it is virtually certain that no class member will benefit and any entity or person that benefits will have to curry favor with both the Board of Trustees and the charity that receives the funding. Knowing tribal entities the way this author does, most of the money will be spent on dubious "administrative expenses" with little left over for whatever Native American farmers and ranchers that might be able to snake their way through the maze of procedural requirements. Even then, those that do work their way through will only be the well-heeled and well-placed Indians. Surely, this is not how the district court intends to spend $400,000,000.00 of class members' money. I think the court in <u>Kellogg</u> said it best, stating, "[c]lass counsel and Kellogg ask us for the impossible - a verdict before the trial." They essentially say, "Just trust us. Uphold the settlement now, and we'll tell you what it is later."

But that is not how appellate review works. The settlement provides no assurance that the charities to whom the money and food will be distributed will bear any nexus to the plaintiff class…and therefore violates our well-established standards governing *cy pres* awards. Dennis at 869. See also Hunt v. Perryman In Re Easysaver Rewards Litigation, (9th Cir. 2015) D. C. No. 3:09-cv-02094-AJB-WVG, court vacated and remanded district courts approval of the settlement, including *cy pres* as an abuse of discretion. See Molski v. Gleich, 307 F.3d 1155 (9th Cir. 2002), overruled on other grounds by Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571 (9th Cir. 2010), the court set aside settlement and the *cy pres* distribution because distribution of damages would neither be burdensome nor costly. Id. at 1173. The use of *cy pres* is appropriate only when the distribution of damages would be costly or the proof of individual claims costly. Nachshin v. AOL, LLC, 663 F.3d 1034, 1038 (9th Cir. 2011). Presently, all of this work has been completed.

At this point, it is worth mentioning again that the overwhelming majority of the class members, particularly the absent, silent, and unnamed class members, opposed the distribution of the Settlement Funds through a *cy pres* distribution. When an overwhelming percentage and number of the class members object, the district court, the class counsel, and the class representatives should sit up and take note. In TBK Partners, Ltd. v. Western Union Corp., 675 F.2d 456, 462 (2d Cir.

19

1982) the court opined: "But although a majority rule should not necessarily be a litmus test for the fairness of a proposal settlement, the opposition to a settlement by a majority of a class is significant." See also Pettway v. American Cast Iron Pipe Co., 576 F.2d 1157 (5th Cir. 1978) disapproving settlement opposed by 70% of subclass, cert. denied, 439 U.S. 1115, 99 S.Ct. 1020, 59 L.Ed. 2d 74 (1979). "Majority opposition to a settlement tends to indicate that the settlement may not be adequate since class members presumably know what is in their own best interests." TBK Partners at 462. One of the factors the district court must consider is the reaction of class members to the proposed settlement. See Gardner v. GC Services, LP, Case No. 10-cv-0997 (S.D. Cal. 2012), quoting Molski, reversed on other grounds. Gardner at 6.

The district court has an important and meaningful role to play in the settlement of a class action. In particular, the district judge has a fiduciary duty to safeguard the interests of the absent class members. See e.g., Sullivan v. D.B. Investments, Inc., 667 F.3d 273, 319 (3d Cir. 2011). The district court must be assured that the settlement secures an advantage for the class in return for the surrender of litigation rights against the defendants. See In Re Katrina Canal Breaches Litigation, 628 F.3d 185 (5th Cir. 2010) citing to In Re Compact Disc Minimum Advertised Price Antitrust Litigation, 216 F.R.D. 197, 221 (D. Me. 2003). The district court abuses its discretion in approving a *cy pres* provision that

awards a majority of the funds to a third-party charity because the purpose of the fund was to compensate victims not unanticipated, incidental charities.

### b. *Cy pres is wrong because class members are not fully compensated.*

In the case on appeal, numerous listening conferences were held and absent, silent, and unnamed class members repeatedly stated that they had not been fully compensated and provided anecdotal evidence in support of the incomplete compensation. The goal of the class members was not to get a payout, but to engage in agribusiness aided in part by a loan. The damages generated by these myriad causes of action, compounded by decades of inability to pursue farming or to expand operations, caused the damages to grow exponentially. The district court, class counsel, and the class representatives all had a hand in forgetting who the Settlement Funds belonged to and how those funds came about. This class action consisted of thousands of individual causes of action aggregated into a class, but it was the individual class members that suffered the losses and they are in the best position to determine the extent of those losses. You cannot authorize a *cy pres* by simply declaring that all class members submitting claims have been satisfied in full. See Marshall v. National Football League, 787 F.3d 502 (8th Cir. 2015) concurring, In Re Bank of America Corp. Securities Litigation, 350 F.3d 747, 752 (8th Cir. 2003) The Marshall court held that a court may approve a settlement that proposes a *cy pres* remedy. However, the court must apply the

following criteria in determining whether a *cy pres* award is appropriate.  If individual class members can be identified through reasonable effort, and the distributions are sufficiently large to make individual distributions economically viable, settlement proceeds should be distributed directly to individual class members.  See also *concurrence* in <u>Marshall</u>, *cy pres* is appropriate only when it is not feasible to make further distributions to class members.  As stated before, no silent class member has been fully compensated in part because collecting $50,000.00 was never their intent.  Rather, expanding or beginning a venture in agribusiness was the goal.  What is particularly troubling is that no one ever took the time to ask an absent, silent, and unnamed class member what their expectations were and when the information was volunteered to class counsel and some class representatives, no one was paying attention.  As set forth in ALI Section 3.07, cmt. b (" few settlements award 100 percent of a class member's losses, and thus it is unlikely in most cases that further distributions to class members would result in more than 100 percent recovery for those class members").  See also <u>Oetting v. Green Jacobson, P.C (In Re Bank of America Corp. Securities Litigation)</u>, 775 F.3d 1060, 1065 (8th Cir. 2015) also holding, [t]hat "because settlement funds are the property of the class, a *cy pres* distribution to a third party of unclaimed settlement funds is permissible only when it is not feasible to make further distributions to class members."  A *cy pres* distribution is

not authorized by declaring as class counsel and the district court have in this case, that "all class members have been satisfied in full." <u>Oetting</u> at 1065. The Fifth Circuit arrived at the same conclusion stating, "[i]t is not true that class members with unliquidated damage claims in the underlying litigation are "fully compensated" by paying the amounts allocated in the settlement". See <u>Klier v. Elf Atochem North America, Inc.</u>, 658 F.3d 468, 479 (5th Cir. 2011) The fact that the members of [one subclass] have received the payment authorized by the settlement agreement does not mean that they have been fully compensated. See <u>Masters v. Wilhelmina Model Agency, Inc.</u>, 473 F.3d 423, 434-435 (2d Cir. 2007). The core construct of Federal Rules of Civil Procedures 23 is that each class member has a constitutionally recognized property right in the claim or cause of action that the class action resolves.

The district court erred in approving a settlement that would result in funds being distributed to one or more *cy pres* recipients in lieu of fully compensating members for their losses. See <u>In Re Baby Products Antitrust Litigation</u>, 708 F.3d 163 (3rd Cir. 2013). A direct distribution to the class members is preferred over *cy pres* distributions. <u>Id</u>. at 173. Private causes of action aggregated into a class action were created by Congress to allow plaintiffs to recover compensatory damages for their injuries. <u>Id</u>. at 173 restating 15 U.S.C. § 15.

To account for the inferiority of *cy pres,* the ALI has published guidelines limiting them to instances where further individual distributions are infeasible. The guidelines provide in pertinent part: "If the settlement involves individual distributions to class members and funds remain after distributions… the settlement should presumptively provide for further distributions to participating class members unless the amounts involved are too small to make individual distributions economically viable or other specific reasons exist that would make further distributions impossible." Baby Products at 173. *Cy pres* awards should generally represent a small percentage of the total settlement barring sufficient justification. Id. at 174. In the case on appeal, the *cy pres* award is greater than the benefit to the class members because the Settlement Fund was $680,000,000.00 before $250,000,000.00 was distributed to class members who could prove up a claim, which left $380,000,000.00 but that amount has been accruing interest for a number of years.

### c. *Cy pres* must be narrowly tailored to benefit the class.

The *cy pres* doctrine takes its name from the Norman French expression,"cy pres comme possible" which means "as near as possible". In Re Airline Ticket Com'n Antitrust Litigation, 307 F.3d 679, 682 (8th Cir. 2002). In that case, the court rejected the district court's *cy pres* distribution because it was not narrowly tailored to the purpose of the litigation. Id. at 684. In the case on appeal, the

24

purpose of the litigation, the sole purpose of the litigation, was to compensate Native American Farmers and Ranchers that experienced discrimination in the lending process with the United States Department of Agriculture.  That action was not a community effort shared by Native Americans, tribal entities, and Not-For-Profits benefitting Native Americans.  Rather, the <u>Keepseagle</u> class action was an aggregation of individual private causes of action.  Therefore, the entire benefit of the Settlement Funds only belong to the class members who have proven up a claim.  See <u>Wilson v. Southwest Airlines, Inc.</u>, 880 F.2d 807 (5th Cir. 1989).  The court reversed and remanded because the district court abused its discretion in applying *cy pres* because there existed class members with rights to the fund.

When considering that the Settlement Funds constitute a property right of the class and not some pool of money that can be appropriated at the whim and discretion by class counsel and the court for the benefit of third parties that have no interest in the funds, combined with the understanding that *cy pres,* it requires the Settlement Funds to benefit the class and when that cannot be accomplished to come as near as possible to the intent of benefitting the class members.  The application that best meets with this understanding would be to provide the Funds for the benefit of Native American Farmers and Ranchers that were class members successful in proving up their claim.  See <u>Ira Holtzman, C.P.A. & Associates Ltd.</u>

v. Turza, 728 F.3d 682 (7th Cir. 2013), Money from a class settlement should be used by the class to the extent feasible.

The *cy pres* distribution must be guided by (1) the objectives of the underlying statute and (2) the interests of the silent class.  See Six (6) Mexican Workers v. Arizona Citrus Growers, 904 F.2d 1301 (9th Cir. 1990).  The district court ordered that any unclaimed funds be distributed through a *cy pres* award to the Inter-American Fund (IAF) for indirect humanitarian assistance in Mexico. The Ninth Circuit rejected this award explaining that (1) the proposal benefits a group too far removed from the plaintiff class, (2) the plan…fails to provide adequate supervision over the distribution, and (3) although the plan permits distributions to areas where class members live,…there is no reasonable certainty that any member will be benefitted.  Id. at 1308-1309.  The present *cy pres* distribution plan fails to meet any of the guiding standards in Six (6) Mexican Workers.  First, the plaintiffs in the present case are identifiable and ascertainable. Second, the charities are too far removed from the silent class members.  Indeed, it is not even known which charities shall receive this enormous benefit.  Third, the plan fails to provide adequate supervision over the *cy pres* funds.  Already, some trustees have engaged in undisclosed self-dealing and at least one trustee and one officer (the president) previously worked for the defendant.  Fourth, there is reasonable certainty that no silent class member will ever benefit from the *cy pres*

funds.  The silent class members by an overwhelming super-majority have rejected the *cy pres* proposal.

No matter how deserving a charity might be, the district court does not have the discretion to award *cy pres* funds unless they are narrowly tailored to the purpose of the class action lawsuit.  In Re Airline Ticket at 684.  If the court finds [after conducting a hearing and setting forth findings of fact] that individual distributions are not viable, then, and only then, may a settlement use a *cy pres* approach.  If, and only if, no recipient whose interests reasonably approximate those being pursued by the class can be identified after thorough investigation and analysis, a court may approve a recipient that does not reasonably approximate the interests being pursued by the class.  See Marshall v. National Football League, (8th Cir. 2015).

Improper distribution to non-relevant third parties creates the appearance of impropriety.  When selection of *cy pres* beneficiaries is not tethered to the nature of the lawsuit and the interests of the silent class members, the selection process may answer to the whims and self-interests of the parties, their counsel, or the court.  It may also create the appearance of impropriety.  Nachshin v. AOL, LLC, 663 F.3d 1034, 1040 (9th Cir. 2011).  A proposed *cy pres* distribution must meet the qualifying standards whether fashioned by the court or the parties.  See also, Dennis v. Kellogg Co. 697 F.3d 858 (9th Cir. 2012).  In that case, the only

connection between Kellogg and a charity feeding the poor is that both dealt with food in some way. Id. at 863. Nor was the concerns of the court placated by the settlement provisions that the charities would be identified at a later date and approved by the court. Id. at 867. "Not just any worthy recipient can qualify as an appropriate *cy* pres beneficiary. To avoid the "many nascent dangers to the fairness of the distribution process", we require there be a driving nexus between the plaintiff class and the *cy pres* beneficiaries. See also Nachshin, Test Parts (1) & (2) and Six (6) Mexican Workers test. In the case on appeal, we do not even have that. The charities will be selected by a board of trustees, some with direct ties to the defendant and others who have engaged in demonstrable, undisclosed, self-dealing with no supervision by the court. The current *cy pres* distribution all but ensures continuing conflicts of interests, graft, self-dealing, and other forms of nefarious behavior for nearly the next quarter century. When the plan for *cy pres* does not adequately target the plaintiff class and fails to provide adequate supervision over distribution, a trial court's application of *cy pres* is improper. Six (6) Mexican Workers at 1309. "Even where *cy pres* is considered, it will be rejected when the proposed distribution fails to provide the "next best" distribution. See City of Philadelphia v. American Oil Co., 53 F.R.D. 45, 72 (D. NJ 1971). Remarkably, the concurring opinion in Six (6) Mexican Workers bears a striking resemblance to the issue set forth in this section. That court stated,

"[h]owever, in this case it is proposed that the doctrine be used in the absence of any expression of purpose or intent by any of those who have any right to the funds." This difficulty has in part, motivated the courts which have rejected the notion. See e.g. In Re Hotel Charges, 500 F.2d 86 (9th Cir. 1974) and Eisen v. Carlisle & Jacquelin, 479 F.2d 1005, 1013 (2nd Cir. 1971), vacated on other grounds 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed. 2d 732 (1974). See Six (6) Mexican Workers at 1312. See also In Re Katrina Canal Breaches Litigation, 628 F.3d 185 (5th Cir. 2010), citing to In Re Compact Disc Minimum Advertised Price Antitrust Litigation, 216 F.R.D. 197, 221 (D. Me. 2003), the court struck down settlement because *cy pres* was not the next best use of the funds and that the settlement was inconsistent with the nature of the underlying action of making victims of discrimination whole. Notably, these funds do not belong to just any person who claims Indian ancestry. These Settlement Funds belong to a private class of people who *happen to be Native Americans*. These class members are still individuals with an identity that is separate and distinct from the supposed *cy pres* beneficiaries. See also Jewish Guild for the Blind v. First National Bank in St. Petersburg, 226 So.2d. 414 (Fla. 2d DCA 1969), "[t]he very purpose of *cy pres* is when the very intent fails and cannot be executed, the equitable doctrine will permit a court to execute as closely as possible the general intent of the settlement

or in this matter the will." See also <u>In Re Pharmaceutical Industry Average Wholesale Price Litigation</u>, 588 F.3d 24, 34 (1st Cir. 2009)

### 2. Class counsel had a conflict of interest and breached its fiduciary duty.

The elements of a breach of fiduciary duty claim are: (1) the existence of a fiduciary relationship; (2) a breach of a fiduciary duty; (3) and damages or harm from the breach. See <u>Advanced Nano Coatings, Inc. v. Hanafin</u>, 478 F. App'x 838 (5th Cir. 2012). It can be said that a breach of fiduciary duty exists when the defendant or breaching party places his interests above the principal. See <u>Gerdes v. Estate of Cush</u>, 953 F.2d 201, 206 (5th Cir. 1992). Class counsel had a fiduciary obligation to all the class members. However, once the cash disbursement took place and it was determined that substantial funds were still available, class counsel determined that the class members should acquiesce to the determination of class counsel to distribute those remaining funds via *cy pres*. From that moment on, every meeting (despite being advertised as listening conferences) was held to convince, cajole, and deceive the class members into accepting the *cy pres* provision of the Settlement Agreement, despite the fact that the Settlement Agreement as it pertained to *cy pres* was and is a monumental failure.

In <u>Radcliffe v. Experian Information Solutions, Inc.</u>, 715 F.3d 1157 (9th Cir. 2013), the court held that conflicted representation provides an independent ground for reversing the settlement. Because the settlement is reversed, so too must the

award of attorney's fees and costs.  See <u>In Re Bluetooth</u>, 654 F.3d 935, 940 (9th Cir. 2011) the court also reversed because the district court abused its discretion by not considering "whether class counsel has properly discharged its duty of loyalty to absent class members."  Adequate representation depends upon "an absence of antagonism [and] a sharing of interests between representatives and absentees." See <u>Molski v. Gleich</u>, 318 F.3d 937, 955 (9th Cir. 2003), overruled on other grounds by <u>Dukes v. Wal-Mart Stored, Inc,</u>, 603 F.3d 571 (6th Cir. 2010).  The entire post settlement handling of the *cy pres* matter has resulted in class counsel and class representatives taking or switching sides against the absent class members.

Class counsel has a fiduciary duty to the class as a whole "and it includes reporting potential conflict issues" to the district court, <u>Rodriguez v. West Publishing Corp.</u>, 563 F.3d 948 (9th Cir. 2009), quoted by <u>Radcliffe</u> at 1167. Absolutely no impropriety can be condoned in this relationship.  "The responsibility of class counsel to absent class members whose control over their attorney is limited does not permit even the appearance of divided loyalties of counsel." <u>Radcliffe</u> at 1167 quoting, <u>Kayes v. Pacific Lumber Co.</u>, 51 F.3d 1449, 1465 (9th Cir. 1995).  As soon as divergent interests emerged within the class, counsel was simultaneously representing clients with conflicting interests. <u>Radcliffe</u>  at 1169.  Class counsel should have obtained a waiver of conflict.  The

<u>Radcliffe</u> court held that the district court abused its discretion in approving a settlement where class representatives and class counsel did not adequately represent the interests of the class.  "Such adherence to self-interests, coupled with the obvious fundamental disregard of responsibilities to all class members who had little or no real voice or influence in the process should not find favor or be rewarded at any level.  Although within the discretion of the district court in the first instance, the court opined that class counsel should be disqualified from participating in any fee award ultimately approved by the district court upon resolution of the case on the merits." <u>Id</u>. at 1169.  The settlement of a class action must be fair, adequate, and reasonable, see Federal Rules of Civil Procedures 23(e)(1)(C).  An absence of material conflicts of interests between the named plaintiffs and their counsel with other class members is central to that adequacy and, in turn, to due process for absent members of the class.  See <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1020 (9th Cir. 1998).  Class counsel not only forced *cy pres* upon the absent class members, but they also colluded with at least a few to several class representatives to force through their own agenda, including a statement that the funds would be forfeited.  Of course, now it is abundantly clear, that this was a false and misleading statement.  See <u>Tennille v. Western Union Co.</u>, D. C. No. 1:09-cv-00938 JLK-KMT, No. 14-1432 (10th Cir. 2015).  A settling defendant has no interest in the amount of the attorney fees awarded when those

fees are paid from the class recovery rather than the defendants coffers. See also Boeing v. Van Gemert, 444 U.S. 472 n.7 (1980) and Copeland v. Marshall, 641 F.2d 880 (C.A.D.C. 1980). In common fund cases, the losing party no longer continues to have an interest in the fund.

A class lawyer's decision to support or oppose a settlement must be made in the best interests of the class. The lawyer may not favor the claims of some class members because they are named plaintiffs, have individually retained the lawyer, or threatened to block a desirable settlement. See County of Suffolk v. Long Island Lighting, Co., 907 F.2d 1295, 1325 (2d Cir. 1990); Parker v. Anderson, 667 F.2d 1204, 1210-1211 (5th Cir. 1982); and Kleiner v. First National Bank of Atlanta, 751 F.2d 1193, 1207 n.28 (11th Cir. 1985).

Ultimately, the district court has the final fiduciary responsibility of ensuring that the *cy pres* distribution is appropriate in all respects and meets with all the required tests. See Maywalt v. Parker & Parsley Petroleum, Co., 67 F.3d 1072, 1078 (2d Cir. 1995) noting that the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion and that the class members were represented adequately. The *cy pres* provisions in a class action settlement require courts to give greater scrutiny to such settlements because of the possibility that class counsel could be compromised by conflicts of interest. See In Re Baby Products Antitrust Litigation, 708 F.3d 163 (3rd Cir 2013); see also In Re

<u>Easysaver Rewards Litigation</u>, 921 F.Supp. 2d 1040 (S.D. Cal. 2013). Because class actions are rife with potential conflicts of interests between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlement agreements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole. <u>In Re Baby Products</u> quoting <u>In Re Gen Motors</u>, 55 F.3d 768, 820 (3d Cir. 1995).

If the *cy pres* award were to be upheld, then class counsel should have its fees reduced accordingly to account for the reduced benefit conferred upon the class members. "Awarding attorney's fees based on the entire settlement rather than the individual distributions creates a potential conflict of interest between absent class members and their counsel by decoupling class counsels financial incentives from those of the class." <u>In Re Baby Products</u> at 178. When appropriate, a class action may be divided into subclasses. The option to utilize subclasses is designed to prevent conflicts of interest in class representation. <u>In Re Pet Food Products Liability Litigation Jim W. Johnson and Dustin Turner</u>, 629 F.3d 333 (3rd Cir. 2010) citing <u>In Re Cendant Corp. Securities Litigation</u>, 404 F.3d at 202 (3rd Cir. 2004). See also <u>Pearson v. NBTY, Inc.</u>, 772 F.3d 778 (7th Cir. 2014). The appellate court held that administrative costs and *cy pres* set asides could not reasonably be included in an attorney fee award because they provide no benefit to the class members. <u>Id</u>. at 784.

34

### 3.  The class representatives breached their fiduciary duties.

A class action lawsuit is not a free for all that permits named parties to act in their own exclusive best interests.  Class representatives owe a fiduciary duty to the unnamed class members.  Fiduciary duties can be formal or informal; formal being principal and agent or attorney and client, and informal arising from a confidential relationship where one person trusts in and relies upon another whether the relation is moral, social, domestic, or merely personal.  See Hogget v. Brown, 971 S.W. 2d 472, 487 Tex App Houston [14 Dist.] 1997.  It can be said that a breach of fiduciary duty is said to exist when the defendant or breaching party places his interests above the principal.  See Gerdes v. Estate of Cush, 953 F.2d 201, 206 (5th Cir. 1992).  In fact, in class actions, there is a greater level of fiduciary care imposed upon a class representative.  The class must have a "conscientious representative plaintiff".  See Rand v. Monsanto, Co., 926 F.2d 596, 599 (7th Cir. 1991) overruled on other grounds by Chapman v. First Index, Inc., 796 F.3d 783 (7th Cir. 2015) and the court must be certain the representatives will fairly and adequately protect the interests of the class; see Hill v. Western Electric Co., 672 F.2d 381,388 (4th Cir. 1982) cert denied, 459 U.S. 981, 103 S.Ct. 318, 74 L.Ed. 294 (1982) (Emphasis supplied).

As case law shows, these class representatives have a duty to act for all class members.  Therefore, seats on the Board of Trustees, some of which were created

35

by class counsel to incentivize a change in position, and cash payouts are not acceptable.  In <u>Ortiz v. Fibreboard Corp.</u>, 527 U.S. 815, 119 S.Ct. 2295, 144 L.Ed. 2d 715 (U.S. 1999), remanded by 527 U.S. 1031, 119 S.Ct. 2387, 144 L.Ed 2d 789 (1999), a class representative has a fiduciary duty to protect the interests of the class, including making appropriate settlement decisions affecting the class.  This obligation requires a duty of loyalty to the class and obedience to or at least observance of the wishes of the class.  In the case on appeal, the absent class members are overwhelmingly against the *cy pres* distribution.  See <u>Regions Bank v. Lee</u>, 905 So. 2d 765 (Ala. 2004), the court refused to uphold a settlement because class representatives failed in their fiduciary responsibility to fully litigate the overwhelming unpopular *cy pres* provision of the Settlement Agreement. Potential conflicts of interests among the class must be considered very carefully. See <u>Anthem Products, Inc., v. Windsor</u>, 521 U.S. 591, 117 S.Ct. 2231, 138 L. Ed 2d 689 (1997).

District court judges are required to give careful scrutiny of these types of provisions.  Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole.  In Re Gen Motors, 55 F.3d at 820 (3rd Cir. 1995).  A settlement

by a defendant and an agreement not to object cannot relieve the district court of its duty to assess fully the settlement.  In Re Bluetooth Headset Products Liab. Litig. … Michael Jones, 654 F.3d 935, 943 (9th Cir. 2011).  Moreover, there can be no collusion, not even a hint.  See Crawford v. Honig, 37 F.3d 485, 487 (9th Cir. 1995), court reversed and remanded striking down the settlement in part because of the inadequacy (collusion) between class counsel and class representatives.  See also Chavez v. PVH Corp., 13-cv-01797-LHK (N.D. Cal. 2015); Pena v. Taylor Farms Pac., Inc., 2:13-cv-01282-KJM-AC (E.D. Cal. 2015); and Radcliffe v. Experian Information Solutions, Inc., 715 F.3d 1157(9th Cir. 2013).

It is abundantly clear that there was a great deal of interaction between the class counsel and the class representatives that gives the reasonable jurist reason to pause, if not gasp, and this requires a great deal of further analysis.  In Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998) the court held that an absence of material conflicts of interests between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class.

The awarding of incentive fees was an abuse of discretion by the district court.  Incentive awards create an unacceptable disconnect between the interests of the contracting representatives and class counsel on the one hand and members of the class on the other.  See Radcliffe at 1164.  See In Re Synthroid Marketing

37

<u>Litigation</u>, 264 F.3d 937, 959 (9th Cir. 2003). It is particularly troubling that these payments were not disclosed when it should have been and where it was plainly relevant to do so. See <u>Rodriguez v. West Publishing Corp.</u>, 563 F.3d 948 (9th Cir. 2009). The district court has a primary role in ensuring a fair settlement. In <u>Maywalt v. Parker & Parsley Petroleum, Co.</u>, 67 F.3d 1072, 1078 (2d Cir. 1995) noting that the district court has a fiduciary responsibility to ensure that the settlement is fair and not a product of collusion and that the class members were represented adequately.

## CONCLUSION

This Honorable Court should repudiate the district court's order and remand with instructions to follow the guidelines set forth by the majority of the appellate courts in the federal circuits.

The *cy pres* distribution is improper because all the class members can be identified and located. The amount remaining is not a residual amount, but rather constitutes the majority of the Settlement Funds. Imagine if you have one gallon container of juice with a little more than a half-gallon of beverage remaining. No household in America would consider that a residual amount of juice. Now if that juice contained a half swallow of juice, every household in America would probably consider that a residue. The *cy pres* fund in question is that half gallon of juice and then some.

38

The *cy pres* distribution will not benefit the absent class members. The distribution must be narrowly tailored to the intent of the compensatory lawsuit "as near as possible." That would mean under the current arrangement a distribution to Native American Farmers and Ranchers that were class members who successfully proved up a claim.

The entire matter should be remanded with instructions because there was either collusion between class counsel and the class representatives or at least enough peculiar activity as to demand a highly scrutinized hearing and analysis by the district court. The actions of class counsel and class representatives certainly have the appearance of self-dealing, deceit, manipulation of class representatives, failure to obey class members, and more. At a minimum, the class representatives were not conscientious and the class counsel did not steer clear of the appearance of impropriety. For these reasons, the lower court ruling should be reversed and remanded with further instructions.

Respectfully submitted,

/s/ D. Craig Tingle
D. Craig Tingle (#56768)
The Tingle Law Firm, P.A.
1008 Airport Road, Suite E
Destin, FL 32541
Phone: 850-650-8138
Fax: 850-650-0365
tingleandassociatespa@embarqmail.com
**Law Firm for Class Member**
**Donivon Craig Tingle**

39

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENT, AND TYPE-STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   This brief contains 9,362, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   This brief has been prepared in a proportionally spaced typeface using Microsoft Word in Font Size 14 and Type Style Times New Roman.

/s/ D. Craig Tingle
Attorney for Donivon Craig Tingle
Dated:  October 21, 2016

## CERTIFICATE OF SERVICE

I hereby certify that on October 21, 2016, I electronically filed the foregoing document with the Clerk of Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system.  The participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I furthermore certify that an additional eight copies have been furnished to the Clerk of Court via US Mail, Return Receipt Requested.

/s/ D. Craig Tingle
D. Craig Tingle